UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------x

MATTHEW CORSO,

Plaintiff,

-against-

CITY OF NEW YORK, JOSE CALLE-PALOMEQUE, and JANE DOE #1,

Defendants.
----------------------------------------------------------------------x

COMPLAINT

17 Civ. 6096

**JURY TRIAL DEMANDED**

Plaintiff Matthew Corso, by his attorneys, MoutonDell'Anno LLP, respectfully alleges:

NATURE OF THE ACTION

1. This is an action to recover money damages arising out of the violation of Mr. Corso's rights under the Constitution of the United States.

JURISDICTION AND VENUE

2. This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States.

3. The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331, 1343, and 1367(a).

4. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and (c).

JURY DEMAND

5. Mr. Corso demands a trial by jury in this action.

PARTIES

6. Plaintiff Matthew Corso is a resident of the County of Kings, State of New York.

7. Defendant City of New York is a municipal organization organized under the laws of the State of New York.

8. Defendant City of New York operates the New York City Police Department ("NYPD"), a department or agency of Defendant City of New York.

9. The NYPD is responsible for the appointment, training, supervision, promotion, and discipline of police officers and supervisory police officers, including the individually named defendants herein.

10. At all times relevant herein, Defendant Jose Calle-Palomeque was an officer, employee, and/or agent of Defendant City of New York.

11. At all times relevant herein, Defendant Calle-Palomeque was acting within the scope of his employment with Defendant City of New York.

12. At all times relevant herein, Defendant Calle-Palomeque was acting under color of state law.

13. Defendant Calle-Palomeque is sued in his individual and official capacities.

14. At all times relevant herein, Defendant Jane Doe # 1 was a supervisor, officer, employee, and/or agent of Defendant City of New York.

15. At all times relevant herein, Defendant Jane Doe # 1 was acting within the scope of her employment with Defendant City of New York.

16. At all times relevant herein, Defendant Jane Doe # 1 was acting under color of state law.

17. Defendant Jane Doe # 1 is sued in her individual and official capacities.

18. The name Jane Doe # 1 is fictitious, her true name being unknown to Mr. Corso at this time.

STATEMENT OF FACTS

19. On February 24, 2016, at approximately 2:00 p.m., Mr. Corso was lawfully present no the “L” train when it arrived at its stop at the 14th Street-Union Square stop in Manhattan.

20. Upon exiting from the train onto the platform, Mr. Corso was stopped by Defendants Calle-Palomeque and Jane Doe # 1, both of whom were in plainclothes.

21. Mr. Corso was carrying no illegal contraband or items, and had not acted in any illegal manner.

22. The individual defendants had no reasonable suspicion or probable cause to stop Mr. Corso.

23. The officers grabbed Mr. Corso by the arm and asked him if he knew why they stopped him.

24. When Mr. Corso told them that he did not know, the individual defendants reached into his back pocket and removed a knife that he had in his back pocket.

25. The individual defendants would later allege that they predicated their stop and search on the fact that they observed Mr. Corso with a black metal clip clipped to his rear, right-side pants pocket.

26. The individual defendants were aware that their pretext for stopping and searching Mr. Corso was unlawful, given that the pretext of seeing a knife clip on a pants pocket has been rejected by both State and Federal Courts in New York. *See, e.g.*, *United States v. Irizarry*, 509 F. Supp. 2d 198, 209 (E.D.N.Y. 2007) (finding that arresting officer lacked reasonable suspicion to

stop and search defendant where "the officer seized defendant based solely on seeing a metal clip protruding from his pocket."); *People v. Sosa*, 2008 WL 4107483, at *6 (Dist. Ct. Nassau Sept. 5, 2008) (where "search and seizure of the Defendant was predicated upon these observations of the clip and outline of a folding knife ... [t]he People have failed to provide any evidence or basis to believe that prior to the knife here in question being seized, Officers Perez had any reason to believe that the clip and portion of the knife he observed was an illegal weapon."); *People v. Cruz*, 963 N.Y.S.2d 506, 510 (App. Term 2013) ("It was impermissible for [Officer] Kekatos to pull the gravity knife out from defendant's left side pants pocket, solely based on the officer's observation of a clip attached to that pocket."); *People v. Mendez*, 894 N.Y.S.2d 9, 10 (2009).

27. The individual defendants had no reasonable suspicion or probable cause to search Mr. Corso.

28. The knife inside Mr. Corso back pocket was a model number CK5TBS Smith & Wesson-branded knife manufactured by Taylor Brands LLC that Mr. Corso uses for work.

29. The knife is a folding knife, with a 3.25-inch blade, and 4.13-inch handle. The blade of the knife locks into the handle using a "liner lock", and can only be released from the handle by unlocking the blade and then manually pushing the blade out of the handle using the thumb knobs.

30. The knife blade cannot readily be opened by the force of gravity or centrifugal force, and does not otherwise meet the definition of a gravity knife as defined under N.Y. Penal L. § 265.00.

31. Morgan Taylor, the President of Taylor Brands, the company which manufactures the subject knife, describes the knife as follows:

> This [knife] as constructed is in no way designed to operate as an assisted opening, an automatic, or a gravity operated folding knife. The knife is designed to operate by an end user utilizing the fixed thumb studs and manually moving the blade out from the closed position into the fully open position. This knife as constructed does include a detent mechanism to help keep the blade in the fully closed position until ready for use.
>
> Taylor Brands does not produce any knives that should be considered to be 'gravity knives'.

32. The individual defendants told Mr. Corso that he was under arrest for possession of a gravity knife, although Mr. Corso objected, stating, in sum and substance, that the knife was legal and was not a gravity knife.

33. The individual defendants knew that the knife was not a gravity knife because, on the "L" train platform, they attempted to use gravity/centrifugal force to open the knife and could not.

34. Mr. Corso's arrest was without probable cause.

35. Mr. Corso transported to a police precinct, upon information and belief, located at 101 East 14th Street, New York, New York. This precinct is also known as "Transit District 4".

36. Once at the precinct, Mr. Corso was placed cuffed on a bench.

37. While on the bench, he observed as Officer Calle-Palomeque repeatedly and forcefully manipulated the parts of the knife in an attempt to loosen the blade, and attempted to open the knife forcefully using one hand.

38. The individual defendants then spoke with the New York County District Attorneys' Office, individually and collectively lying to the New York County District Attorney's

Office that Mr. Corso had violated New York Penal Law § 265.01(1) (criminal possession of a weapon in the fourth degree) and New York Transit Rules of Conduct § 1050.8.

39. Based on these fabricated allegations, the New York County District Attorney's Office forwarded to the individual defendants a Criminal Court Complaint.

40. Upon information and belief, the Criminal Court Complaint was reviewed and then signed by the individual defendants.

41. Upon information and belief, when reviewing and signing the Criminal Court Complaint, individual defendants knew the allegations contained therein to be false.

42. Upon information and belief, the executed Criminal Court Complaint was then forwarded by the individual defendants to the New York County District Attorney's Office.

43. Legal process was issued against Mr. Corso by the individual defendants.

44. During the pendency of the criminal proceeding, the individual defendants forwarded false evidence to the New York County District Attorney's Office, *inter alia*, arrest reports; complaint reports; evidence vouchers; the manipulated and damaged knife; the fabricated Criminal Court Complaint; and property vouchers.

45. Mr. Corso suffered damage as a result of Defendants' actions. Mr. Corso was, *inter alia*, deprived of liberty, suffered emotional distress, mental anguish, fear, anxiety, embarrassment, humiliation, and damage to reputation.

46. Defendants, by their conduct toward Mr. Corso as alleged herein, violated Mr. Corso's rights guaranteed by 42 U.S.C. § 1983, the Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States.

47. As a direct and proximate result of this unlawful conduct, Mr. Corso sustained the damages alleged herein.

FIRST CAUSE OF ACTION
*Unlawful Stop and Search*

48. Mr. Corso repeats and realleges each and every allegation as if fully set forth herein.

49. Defendants violated the Fourth and Fourteenth Amendments because they stopped and searched Mr. Corso without reasonable suspicion.

50. As a direct and proximate result of this unlawful conduct, Mr. Corso sustained the damages alleged herein.

SECOND CAUSE OF ACTION
*False Arrest*

51. Mr. Corso repeats and realleges each and every allegation as if fully set forth herein.

52. The individual defendants violated the Fourth and Fourteenth Amendments because they arrested Mr. Corso without probable cause.

53. As a direct and proximate result of this unlawful conduct, Mr. Corso sustained the damages alleged herein.

THIRD CAUSE OF ACTION
*Denial of Right to a Fair Trial*

54. Mr. Corso repeats and realleges each and every allegation as if fully set forth herein.

55. The individual defendants created false evidence against Mr. Corso.

56. The individual defendants forwarded false evidence to prosecutors in the New York County District Attorney's Office.

57. In creating false evidence against Mr. Corso, and in forwarding false evidence to prosecutors, the individual defendants violated Mr. Corso's right to a fair trial under the Due Process Clause of the Fifth and Fourteenth Amendments of the Constitution of the United States.

58. All of the false evidence, and, in particular, the knife that had been manipulated and damaged so that its blade swung freely through the use of gravity and/or centrifugal forces, was likely to influence a jury's decision in the underlying criminal matter.

59. As a direct and proximate result of this unlawful conduct, Mr. Corso sustained the damages alleged herein, including a deprivation of his liberty.

## FOURTH CAUSE OF ACTION
*Malicious Abuse of Process*

60. Mr. Corso repeats and realleges each and every allegation as if fully set forth herein.

61. The individual defendants issued and/or caused to be issued legal process to place Mr. Corso under arrest.

62. The individual defendants arrested Mr. Corso in order to obtain collateral objectives outside the legitimate ends of the legal process, *i.e.*, to enforce the City of New York's illegal policy of arresting persons with knives under the pretense of possession of a gravity knife, as set forth more fully herein; and to cover up their unlawful stop and search of Mr. Corso.

63. The individual defendants pursued these collateral objectives after issuance of legal process by, *inter alia*, forwarding false evidence to the New York County District Attorney's Office and continuing to participate in the prosecution of Mr. Corso.

64. The individual defendants acted with intent to do harm to Mr. Corso without excuse or justification.

65. As a direct and proximate result of this unlawful conduct, Mr. Corso sustained the damages alleged herein.

FIFTH CAUSE OF ACTION
*Failure to Intervene*

66. Mr. Corso repeats and realleges each and every allegation as if fully set forth herein.

67. Those individual defendants that were present but did not actively participate in the aforementioned unlawful conduct observed such conduct; had an opportunity to prevent such conduct; had a duty to intervene and prevent such conduct; and failed to intervene.

68. Accordingly, the individual defendants who failed to intervene violated the Fourth, Fifth, and Fourteenth Amendments of the Constitution of the United States.

69. As a direct and proximate result of this unlawful conduct, Mr. Corso sustained the damages alleged herein.

SIXTH CAUSE OF ACTION
*Monell*

70. Mr. Corso repeats and realleges each and every allegation as if fully set forth herein.

71. This is not an isolated incident. Defendant The City of New York, through its policies, customs, and practices, directly caused the constitutional violations suffered by Mr. Corso.

72. For years, Defendant City of New York has either deliberately disregarded or remained deliberately indifferent to training its officers on how to properly distinguish illegal gravity knives from legally purchased knives/tools.

73. For years, Defendant City of New York has either deliberately disregarded or remained deliberately indifferent to training its officers to educate them and prevent them from

stopping, searching, and arresting individuals based on the pretext of a knife clip being clipped to their pants pocket.

74. These deliberately indifferent practices have perpetuated tens of thousands of stops, searches, false arrests, detentions, and prosecutions for possession of instruments alleged to be gravity knives, which in reality are not gravity knives and are therefore not illegal in any respect.

75. Defendant City of New York has explicitly and/or implicitly established a policy of stopping, searching, falsely arresting, and selectively prosecuting individuals who possess legal utility knives in order to intimidate and harass.

76. Defendant City of New York was aware that the pretext for stopping and searching individuals based on seeing a knife clip on a pants pocket has been rejected by both State and Federal Courts in New York. *See, e.g.*, *United States v. Irizarry*, 509 F. Supp. 2d 198, 209 (E.D.N.Y. 2007) (finding that arresting officer lacked reasonable suspicion to stop and search defendant where "the officer seized defendant based solely on seeing a metal clip protruding from his pocket."); *People v. Sosa*, 2008 WL 4107483, at *6 (Dist. Ct. Nassau Sept. 5, 2008) (where "search and seizure of the Defendant was predicated upon these observations of the clip and outline of a folding knife ... [t]he People have failed to provide any evidence or basis to believe that prior to the knife here in question being seized, Officers Perez had any reason to believe that the clip and portion of the knife he observed was an illegal weapon."); *People v. Cruz*, 963 N.Y.S.2d 506, 510 (App. Term 2013) ("It was impermissible for [Officer] Kekatos to pull the gravity knife out from defendant's left side pants pocket, solely based on the officer's observation of a clip attached to that pocket."); *People v. Mendez*, 894 N.Y.S.2d 9, 10 (2009).

77. Defendant City of New York has also been aware for years that tens of thousands of people are being arrested as a result of these practices and policies.

78. On May 31, 2016, an article entitled "New York's Outdated Knife Law" outlined the following:

> Between 2000 and 2012, New York City police officers arrested 70,000 people for violating the weapons law; based on a six-month sample reviewed by the Legal Aid Society, which represents indigent defendants, gravity knives account for more than two-thirds of arrests under the law. Most of these cases don't go to trial, but the arrest itself, and the following entanglement with the justice system, can wreak havoc on a person's life, especially a lower-income person who can't afford to spend day after day returning to court.

79. In *United States v. Irrizary*, Judge Weinstein held that the defendant had been "seized [ ] without reasonable suspicion of criminal activity and arrested [ ] without probable cause." 509 F.Supp.2d at 199. He found that the folding knife which was recovered was not a gravity knife and that "Officer McCabe could not have reasonably believed it to be one .... With so many folding lock-back utility knives in circulation for lawful purposes, nationally and within the State of New York, it was not reasonable for the arresting officer to believe that the [folding knife] represented a weapon." *Id.* at 210 (emphasis added).

80. This policy, pattern and practice is born from the NYPD's intentional misconstruction of and/or deliberate indifference to the proper definition of an illegal gravity knife

under the law, which they believe includes any knife that is capable of being forcefully opened with one hand.

81. As a result of their intentional or deliberately indifferent misunderstanding of what actually constitutes a gravity knife, the NYPD has utterly failed to properly train, educate and familiarize officers – both superior and subordinate – as to the appearance, design, look, function, and use of illegal "gravity knives" versus legal knives whose possession and use are not prohibited under New York State Law.

82. Despite this clear and unambiguous definition, for years the NYPD has either remained deliberately indifferent to training its officers on how to properly distinguish illegal "gravity knives" from legally purchased knives/tools, which are not by definition, design or function, "gravity knives," or has deliberately disregarded the proper definition of a gravity knife in favor of its own definition in contravention of the statute. This practice of deliberate indifference has perpetuated thousands of false arrests, detentions, and prosecutions, for possession of instruments alleged to be gravity knives, which in reality are not gravity knives and are therefore not illegal in any respect.

83. The plague of false arrests and prosecutions for alleged gravity knives stems from the NYPD's fundamental lack of awareness and training - or deliberate disregard - of the obvious and fundamental difference between an actual gravity knife and other common folding knives, such as slip joint, liner lock, and lockback knives which are fundamentally **not** gravity knives.

84. Between 2006 and 2008, the numbers of NYPL 265.01(1) arrests increased exponentially by several thousand every year and has stayed consistently at approximately 7,000 arrests per year from 2009 through the present.

85. Upon information and belief the majority of the arrests under this charge are specifically related to alleged gravity knife possession.

86. These false arrests are made with deliberate disregard or indifference regarding the legality of the knives allegedly being possessed and without any appropriate testing or examination to determine same.

87. Due to the NYPD's utter failure to train its officers as to the distinct difference between legal and illegal knives, and/or the NYPD's explicit/implicit indifference or disregard to the distinction between legal knives and illegal gravity knives, thousands of innocent individuals have been falsely arrested and prosecuted.

88. As a result of this policy pattern and practice of intentionally disregarding the characteristics of an actual gravity knife in favor of their own definition of a gravity knife in contravention of 265.01(1) or being otherwise deliberately indifference to training and proper differentiation between legal knives and illegal gravity knives, thousands of individuals have been stopped, searched, arrested and prosecuted in violation of their rights as secured by the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

89. Defendants caused Mr. Corso to be arrested in the absence of any evidence of criminal wrongdoing, notwithstanding their knowledge that said his arrest was not based on probable cause or any legitimate basis under the law in violation of the constitutional rights of Mr. Corso, and knowing that Mr. Corso would be required to appear in court to be prosecuted under the aforementioned unconstitutional arrests in violation of the constitutional rights of Mr. Corso.

90. The acts complained of were carried out by the aforementioned individual defendants and subordinate officers of the NYPD officers in their capacities as NYPD officers and officials, with all the actual and/or apparent authority attendant thereto.

91. The acts complained of were carried out by the aforementioned individual defendants and subordinate NYPD officers in their capacities as NYPD officers and officials pursuant to the customs, policies, usages, practices, procedures, and rules of the City of New York and NYPD, all under the supervision of other ranking officers of said departments.

92. The pattern of unconstitutional arrests established by policy-making officials within the NYPD and the City of New York; the failure to train officers and employees regarding the distinctions between legal folding knives and illegal gravity knives; and the failure to supervise and/or discipline staff responsible for the unconstitutional arrests are so institutionalized as to represent a policy or custom of unconstitutional violations that have resulted in the deprivation of plaintiff's rights.

93. The aforementioned customs, policies, usages, practices, procedures and rules of the City of New York and the NYPD include, but are not limited to, the following unconstitutional practices: (a) explicitly and/or implicitly establishing a policy of falsely arresting individuals who possess legal utility knives in order to intimidate and harass individuals who carry them; (b) making arrests without probable cause or any legal basis in order to promulgate the City of New York's deliberately flawed interpretation of a gravity knife; (c) showing deliberate indifference to whether the arrests made pursuant to that were made based on probable cause or with the proper application of the New York Penal Law; (d) showing deliberate indifference to the training of subordinate officers to not arrest individuals unless they are arrested upon probable cause or a

basis under the law in accordance with the proper standards under the New York Penal Law; (e) showing deliberate indifference to training officers as to the difference between gravity and non-gravity knives; (f) having no check or balance in place to verify the legality of these knives; (g) showing deliberate indifference to the supervision of subordinate officers in the NYPD for the arrests in determining whether the alleged "gravity knives" were legitimate; (h) making the aforementioned arrests notwithstanding clearly established law prohibiting them; (i) specifically instructing officers on using an improper test or manner to check the functionality of a knife that specifically includes legal folding knives within the definition of gravity knives; (j) utilizing an improper test or manner to check the functionality of a knife that specifically includes legal folding knives within the definition of gravity knives; (k) failing to properly instruct and educate officers regarding the proper definition of centrifugal force; and (l) City of New York policymakers continued constructive acquiescence to repeated and continuing constitutional violations of individuals who are being illegally arrested and prosecuted.

94. The existence of the aforesaid unconstitutional customs and policies may be inferred from repeated occurrences of similar wrongful conduct, as well as the NYPD's own statistics, and statistics and reports maintained by other City of New York agencies.

95. The foregoing customs, policies, usages, practices, procedures, and rules of the City of New York and NYPD constituted a deliberate indifference to the safety, well-being, and constitutional rights of Mr. Corso.

96. The foregoing customs, policies, usages, practices, procedures and rules of the City of New York and NYPD were the direct and proximate cause of the constitutional violations suffered by plaintiff as alleged herein.

97. The foregoing customs, policies, usages, practices, procedures and rules of the City of New York, and NYPD were the moving force behind the constitutional violations suffered by plaintiff as alleged herein.

98. As a result of the foregoing customs, policies, usages, practices, procedures, and rules of the City of New York, and NYPD, Mr. Corso was arrested without probable cause or any legal basis in violation of his constitutional rights.

99. Defendants, collectively and individually, while acting under color of state law, acquiesced in and encouraged a pattern of unconstitutional conduct by subordinate NYPD officers, and were directly responsible for the violation of the constitutional rights of Mr. Corso.

100. Defendant City of New York, through the NYPD, has had, and still has, hiring practices that it knows will lead to the hiring of police officers lacking the intellectual capacity and moral fortitude to discharge their duties in accordance with the Constitution of the United States and is indifferent to the consequences.

101. Defendant The City of New York, at all relevant times, was aware that the individual defendants routinely committed constitutional violations such as those at issue here and has failed to change its policies, practices, and customs to stop this behavior.

102. Defendant The City of New York, at all relevant times, was aware that the individual defendants are unfit officers who have previously committed the acts alleged herein and/or have a propensity for unconstitutional conduct.

103. These policies, practices, and customs were the moving force behind Mr. Corso injuries.

PRAYER FOR RELIEF

WHEREFORE, Mr. Corso respectfully requests judgment against Defendants as follows:

(a) Compensatory damages against all defendants, jointly and severally;

(b) Punitive damages against the individual defendants, jointly and severally;

(c) Reasonable attorney's fees and costs pursuant to 28 U.S.C. § 1988; and

(d) Such other and further relief as this Court deems just and proper.

Dated: New York, New York
August 13, 2017

By: /s/

Gregory P. Mouton, Jr., Esq.
MoutonDell'Anno LLP
*Attorneys for Plaintiff Matthew Corso*
305 Broadway, 7th Floor
New York, NY 10007
Phone & Fax: (646) 706-7481

17 Civ. 6096

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MATTHEW CORSO,

Plaintiff,

-against-

CITY OF NEW YORK, JOSE CALLE-PALOMEQUE, and JANE DOE #1,

Defendants.

COMPLAINT

MOUTONDELL'ANNO LLP

305 Broadway, 7th Floor
New York, NY 10007
Phone & Fax: (646) 706-7481