UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
MATTHEW CORSO,

                    Plaintiff,

                                              **MEMORANDUM AND ORDER**

          - against -
                                               17 Civ. 6096 (NRB)

JOSE CALLE-PALOMEQUE and JANE DOE #1,

                    Defendants.
----------------------------------------X
**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

     Plaintiff Matthew Corso brought this suit pursuant to 42
U.S.C. § 1983 against the City of New York, New York City Police
Department ("NYPD") Officer Jose Calle-Palomeque, and one "Jane
Doe" NYPD Officer defendant ("defendants"), alleging multiple
constitutional violations arising from his February 24, 2016
arrest.  By Memorandum and Order dated September 20, 2018, this
Court granted in substantial part defendants' first Rule 12(b)(6)
motion to dismiss Corso's initial complaint, leaving only the
unlawful stop and search claim against the individual defendants
outstanding.  See Corso v. City of New York, No. 17 Civ. 6096
(NRB), 2018 WL 4538899 (S.D.N.Y. Sept. 20, 2018).[1]  After Corso

_____

     [1] Corso's initial complaint asserted six causes of action: (1) unlawful
stop and search; (2) false arrest; (3) denial of the right to a fair trial; (4)
malicious abuse of process; (5) failure to intervene; and (6) municipal
liability under Monell.  See ECF No. 1.  The Court's September 2018 Memorandum
and Order dismissed each of Corso's claims to the extent they were filed against
the City, and dismissed plaintiff's false arrest, malicious abuse of process,
denial of a fair trial, and the failure to intervene claim as against defendant
Jose Calle-Palomeque.  The September 2018 ruling granted Corso leave to replead

repleaded the evidence fabrication and derivative failure to intervene claims in his first amended complaint, <u>see</u> ECF No. 27, the remaining defendants filed a partial motion to dismiss the newly pleaded claims, <u>see</u> ECF No. 34.   The Court denied that partial motion to dismiss in an April 2019 Memorandum and Order. <u>See</u> <u>Corso v. City of New York</u>, No. 17 Civ. 6096 (NRB), 2019 WL 1570807 (S.D.N.Y. Apr. 11, 2019).   As a result of those two rulings, only the fair trial and unlawful stop and search claims remained against Officer Calle-Palomeque.   Also remaining were an unlawful stop and search claim against the "Jane Doe" officer and a derivative failure to intervene claim against the "Jane Doe" officer pertaining to the alleged fair trial claim.

Presently before the Court is (1) plaintiff's motion for leave to file a second amended complaint to substitute NYPD Lieutenant Angela Morris for the "Jane Doe" officer, <u>see</u> ECF No. 51; and (2) defendant's partial motion to dismiss plaintiff's fair trial claim in light of the Supreme Court's June 20, 2019 decision in <u>McDonough v. Smith</u>, 139 S. Ct. 2149 (2019), <u>see</u> ECF No. 55.   For the following

---

the evidence fabrication claim as against Officer Calle-Palomeque and the failure to intervene claim as against Officer Doe to the extent it was based on Officer Calle-Palomeque's alleged fabrication of evidence.

reasons, plaintiff's motion is denied and defendant's motion is granted.[2]

## I.  <u>Background</u>[3]

The Court assumes familiarity with the facts of this case, which are detailed at length in the Court's two prior rulings. It suffices for present purposes to note that on February 24, 2016, Officer Calle-Palomeque and the previously unidentified "Jane Doe" officer whom plaintiff now seeks to identify as NYPD Officer Angela Morris (collectively, "the officers"), arrested plaintiff on the L train platform of the 14th Street-Union Square stop in Manhattan upon removing a knife from Corso's right rear pocket. The officers claimed to be arresting plaintiff for possession of a gravity knife, even though the officers purportedly were aware that the knife that they recovered was not in fact a gravity knife. <u>See</u> SAC ¶ 31 ("The individual defendants knew that the knife was not a gravity knife because on the 'L' train platform, they attempted to use gravity/centrifugal force to open the knife but could not."). Corso was thereafter transported to a police precinct

---

[2] As used herein, "defendant" refers to defendant Officer Jose Calle-Palomeque (i.e., the only named defendant remaining in this case following the Court's September 2018 Memorandum and Order, which dismissed with prejudice all claims that had been brought against the City of New York).

[3] The following facts are drawn from Corso's proposed second amended complaint ("SAC"), <u>see</u> ECF No. 44-1, and are accepted as true unless otherwise noted, <u>see</u> <u>Stadnick v. Vivint Solar, Inc.</u>, 861 F.3d 31, 35 (2d Cir. 2017).

where he observed Officer Calle-Palomeque manipulating the knife so that it could be opened forcefully with one hand.

Based on the officers' representations, the New York County District Attorney's Office drafted a criminal court complaint stating that plaintiff had violated New York Penal Law § 265.01(1), which at that time criminalized the possession of, <u>inter alia</u>, gravity knives,[4] and New York Transit Rule of Conduct § 1050.8, which prohibits the carrying of weapons and other dangerous instruments within the New York City transit system.   <u>See</u> N.Y.C.R.R. § 1050.8.  Plaintiff was subsequently required to appear in New York County Criminal Court on three occasions between April and November of 2016, during which time the officers purportedly forwarded the District Attorneys' Office false evidence and made false statements concerning the nature of the knife that they had found on plaintiff's person.   Corso's criminal prosecution ultimately was resolved with an adjournment in contemplation of dismissal ("ACD").  This proceeding followed.

*     *     *

Prior to commencing this action on August 13, 2017, Corso submitted two substantially identical FOIL requests to the NYPD's

---

[4] Section 265.00(5) defined "gravity knife" to be "any knife which has a blade which is released from the handle or sheath thereof by the force of gravity or the application of centrifugal force which, when released, is locked in place by means of a button, spring, lever or other device."  N.Y. Penal Law § 265.00(5).  While not material to this ruling, the Court recognizes that New York recently repealed its prohibition against the possession of gravity knives. <u>See</u> 2019 N.Y. Sess. Laws Ch. 34 (A. 5944).

Legal Bureau requesting documentation in connection with his February 24, 2016 arrest. See ECF No. 44 Ex. 2 (December 13, 2016 FOIL request); ECF No. 44 Ex. 3 (March 10, 2017 FOIL request). The NYPD Legal Bureau responded to those requests on March 22, 2017, with redacted versions of Corso's arrest and complaint reports. See ECF No. 50 Ex. 4. Among other things, the March 22, 2017 complaint report identified "LT MORRIS" in the field labeled "Supervisor On Scene" and "LT MORRIS ANGELA" in the "Supervisor Approving Name" field. See ECF No. 50-4 at 6-7.

Notwithstanding the fact that Lieutenant Morris's name was made available to plaintiff several months prior to the filing of his initial complaint, plaintiff maintains that he was unaware that Lieutenant Morris was the "Jane Doe" defendant involved in his arrest and that the NYPD failed to disclose that information until Officer Calle-Palomeque's initial disclosures were produced on May 22, 2019. See ECF No. 50-5 (listing "Lt. Angela Morris, NYPD, Transit District Bureau 4" as an individual likely to have discoverable information).

Now, relying on the May 22, 2019 disclosure, and despite New York's three-year statute of limitations on Section 1983 unlawful stop and search claims having already expired, Corso seeks leave to substitute the "Jane Doe" defendant in this action with Lieutenant Morris. See ECF No. 44. The Corporation Counsel opposes the request on the grounds that any claims against

Lieutenant Morris are time-barred and that the proposed amendment does not relate back under Rule 15(c).  Officer Calle-Palomeque has separately moved to dismiss plaintiff's fair trial claim in light of the Supreme Court's ruling in McDonough v. Smith, which was decided several months after this Court denied defendants' Rule 12(b)(6) motion to dismiss that claim.[5]

Because Corso's unlawful stop and search claim against Lieutenant Morris is time-barred, Corso's motion to amend the first amended complaint to substitute Lieutenant Morris for the Jane Doe defendant is denied.  Moreover, because plaintiff's fair trial claim fails as a matter of law in light of the Supreme Court's ruling in McDonough, Officer Calle-Palomeque's partial motion to dismiss that claim is granted.

## II.  **Applicable Law**

"Section 1983 does not provide a specific statute of limitations.  Thus, courts apply the statute of limitations for personal injury actions under state law.  Section 1983 actions filed in New York are therefore subject to a three-year statute of limitations."  Hogan v. Fischer, 738 F.3d 509, 517 (2d Cir. 2013).  "Although courts look to state law

---

[5] The Supreme Court in McDonough held that a plaintiff "[cannot] bring his fabricated-evidence claim under § 1983 prior to favorable termination of his prosecution." McDonough, 139 S. Ct. at 2156. As discussed infra, defendant argues that plaintiff's fair trial claim fails post-McDonough because the criminal proceeding Corso challenges, which terminated via an ACD, did not result in a favorable termination.

for the length of the limitations period, the time at which a §
1983 claim accrues 'is a question of federal law,' 'conforming in
general to common-law tort principles.'" <u>McDonough v. Smith</u>, 139
S. Ct. 2149, 2155 (2019) (quoting <u>Wallace v. Kato</u>, 549 U.S. 384,
388 (2007)).  "[I]t is the standard rule that accrual occurs when
the plaintiff has a complete and present cause of action, that is,
when the plaintiff can file suit and obtain relief." <u>Smith v.</u>
<u>Campbell</u>, 782 F.3d 93, 100 (2d Cir. 2015) (quoting <u>Wallace</u>, 549
U.S. at 391) (citations and quotation marks omitted).

Moreover, "[i]t is familiar law that 'John Doe' pleadings
cannot be used to circumvent statutes of limitations, because
replacing a 'John Doe' with a named party in effect constitutes a
change in the party sued." <u>Aslanidis v. U.S. Lines, Inc.</u>, 7 F.3d
1067, 1075 (2d Cir. 1993) (citations omitted).  Accordingly:

> [M]ost federal district courts within the Second Circuit have
> not allowed the amendment of a complaint to add an individual
> officer's name after the statute of limitations has run to
> relate back to the filing of the original complaint naming
> 'John Doe' as a defendant; instead they rule that Section
> 1983 claims are time-barred against the
> newly named defendants.

<u>Ash v. City of New York</u>, No. 16 Civ. 9548 (GHW), 2020 WL 58240, at
*6 (S.D.N.Y. Jan. 6, 2020) (quoting <u>Dacosta v. City of N.Y.</u>, 296
F. Supp. 3d 569, 591 (E.D.N.Y. 2017)).  <u>See also Liverpool v.</u>
<u>Davis</u>, No. 17 Civ. 3875 (KPF), 2020 WL 917294, at *6 (S.D.N.Y.
Feb. 26, 2020) ("[P]laintiffs are not allowed to circumvent New
York's three-year statute of limitations by filing a complaint

7

against a John Doe defendant within the three-year window, and then amending the complaint to name the defendant at a later time.").

However, a plaintiff may name a John or Jane Doe defendant nunc pro tunc if the plaintiff can show that the amended complaint "relates back" to a timely-filed complaint under Federal Rule of Civil Procedure 15(c). See Hogan, 738 F.3d at 518-19. Under Rule 15(c)(1)(A),[6] an amended pleading relates back to an earlier-filed complaint when "the law that provides the applicable statute of limitations allows relation back." Id. at 518. Where, as here, the applicable statute of limitations is determined by state law, "courts should assess both the state and federal relation back doctrines and apply whichever law is more generous." Liverpool, 2020 WL 917294, at *7 (quoting Anderson v. City of Mount Vernon, No. 09 Civ. 7082 (ER) (PED), 2014 WL 1877092, at *2 (S.D.N.Y. Mar.

---

[6] An amended complaint that adds a new party can alternatively relate back under Federal Rule of Civil Procedure 15(c)(1)(C), which provides, in relevant part, that "[a]n amendment to a pleading relates back to the date of the original pleading when . . . the amendment changes the party or the naming of the party against whom a claim is asserted . . . [and] the party to be brought in by amendment . . . knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." 15(c)(1)(C)(ii). However, "[t]his Circuit has interpreted [Rule 15(c)(1)(C)] to preclude relation back for amended complaints that add new defendants, where the newly added defendants were not named originally because the plaintiff did not know their identities." Hogan, 738 F.3d at 517. Stated otherwise, where, as here, a plaintiff's initial failure to name the "John Doe" defendants is due not to a "mistake" but to a lack of knowledge as to the defendants' identities, the proposed amendment cannot be said to "relate back" under Rule 15(c). See Scott v. Vill. of Spring Valley, 577 F. App'x 81, 83 (2d Cir. 2014) (summary order) (holding that because plaintiff's "proposed amendment d[id] not correct a mistake of fact but rather s[ought] to add information—-the names of the officers involved—-that he lacked when he filed the complaint. . . [the plaintiff's] proposed amendment d[id] not satisfy Rule 15(c).").

28, 2014)).  The Second Circuit has held that, relative to the relevant federal relation back doctrine, New York's principle of relation back for cases involving John Doe defendants is the "more forgiving one."  <u>Hogan</u>, 738 F.3d at 518.

As relevant here, Section 1024 of the New York Civil Practice Law and Rules provides:

> A party who is ignorant, in whole or in part, of the name or identity of a person who may properly be made a party, may proceed against such person as an unknown party by designating so much of his name and identity as is known. If the name or remainder of the name becomes known all subsequent proceedings shall be taken under the true name and all prior proceedings shall be deemed amended accordingly.

N.Y. C.P.L.R. § 1024 (McKinney 2013).  In order to invoke the benefits of § 1024, however, a plaintiff "must exercise due diligence, prior to the running of the statute of limitations, to identify the defendant by name."  <u>Hogan</u>, 738 F.3d at 519 (quoting <u>Bumpus v. New York City Transit Auth.</u>, 883 N.Y.S.2d 99, 104 (N.Y. App. Div. 2nd Dep't 2009)).  "Any failure to exercise due diligence to ascertain the 'Jane Doe's' name subjects the complaint to dismissal as to that party."  <u>Bumpus</u>, 883 N.Y.S.2d at 104.

To determine whether the due diligence requirement has been satisfied, courts "evaluat[e] the various steps that the plaintiff could have taken and did in fact take to identify the actual name of the 'John Smith' defendants prior to the expiration of the statute of limitations period."  <u>Wilson v. City of New York</u>, No. 15 Civ. 07368 (AJN) (KHP), 2017 WL 9538860, at *4-5 (S.D.N.Y. Apr.

4, 2017), <u>report and recommendation adopted,</u> No. 15 Civ. 7368
(AJN), 2017 WL 2693599 (S.D.N.Y. June 19, 2017) (listing various
steps a plaintiff in a Section 1983 case can take in order to
ascertain the actual name of a John Doe defendant, including, <u>inter
alia</u>, "obtain[ing] pre-action discovery pursuant to CPLR § 3102(c)
. . . examin[ing] court filings in the criminal case that may
contain the names of the officers involved in the arrest . . .
[and] writ[ing] to New York City Corporation Counsel to memorialize
verbal requests for identification of the names of the officers
involved in the arrest.").

Finally, while "[e]quitable tolling allows courts to extend
the statute of limitations beyond the time of expiration as
necessary to avoid inequitable circumstances," <u>Johnson v. Nyack
Hosp.</u>, 86 F.3d 8, 12 (2d Cir. 1996), "equitable tolling is only
appropriate in rare and exceptional circumstances in which a party
is 'prevented in some extraordinary way from exercising his
rights.'" <u>Zerilli-Edelglass v. New York City Transit Auth.</u>, 333
F.3d 74, 80 (2d Cir. 2003) (quoting <u>Johnson</u>, 86 F.3d at 12).

## III. <u>Discussion</u>

Plaintiff's motion for leave to amend to substitute
Lieutenant Angela Morris for the "Jane Doe" defendant and
defendant's partial motion to dismiss plaintiff's fair trial claim
are addressed in turn.

A.   **Corso's Motion to Amend**

Applying New York's three-year statute of limitations on Section 1983 claims, see Hogan, 738 F.3d at 517, the statute of limitations on Corso's unlawful stop and search claim expired on February 24, 2019 (i.e., three years after his February 24, 2016 arrest).[7]   Corso's unlawful stop and search claim against Officer Morris is therefore time barred unless the statute of limitations is equitably tolled or Corso's proposed second amended complaint naming the "Jane Doe" defendant relates back, pursuant to Rule 15(c), to the filing of an earlier, timely filed complaint.

Plaintiff argues, as a preliminary matter, that the stays of discovery in this case equitably tolled the statute of limitations such that his proposed amendment, which seeks to add Lieutenant Morris as the "Jane Doe" defendant, is in fact within the three-

---

[7] Corso's briefing presumes that both of his proposed claims against Lieutenant Morris (i.e., unlawful stop and search and failure to intervene pertaining to the fair trial claim) accrued on the date of his arrest.   The Supreme Court recently clarified, however, that "the statute of limitations for a fabricated-evidence claim . . . does not begin to run until the criminal proceedings against the defendant (i.e., the § 1983 plaintiff) have terminated in his favor." McDonough, 139 S. Ct. at 2154-55.  Accordingly, and assuming, arguendo, that Corso's acceptance of an ACD constitutes a "favorable termination" for purposes of his fair trial claim, that claim would not have accrued until November of 2016 (i.e., the date of the purportedly favorable termination), rendering Corso's proposed fair trial claim against Lieutenant Morris timely when Corso sought leave to amend to name Lieutenant Morris as the "Jane Doe" defendant in September of 2019. See ECF No. 51.  However, because the Court concludes that Corso's fair trial and derivative failure to intervene claims are precluded by his acceptance of an ACD, see infra at 16-22, the Court need only address the limitations period as it pertains to Corso's unlawful stop and search claim.

year statute of limitation.[8]  He argues in the alternative that even if the statute of limitations was not equitably tolled, his proposed amendment relates back under FRCP 15(c)(1)(A).  The Court disagrees on both points.

First, plaintiff's argument that "the statute of limitations was equitably tolled during the stay of discovery," see ECF No. 51 at 8, presumes that equitable tolling is automatically triggered by a stay of discovery pending resolution of a Rule 12(b)(6) motion to dismiss.  To the contrary, determining whether equitable tolling is appropriate involves a context-specific inquiry, and the party seeking equitable tolling bears the burden of proving that the circumstances are "so extraordinary that the doctrine should apply."  Zerilli-Edelglass, 333 F.3d at 80-81.  See also Walker v. Jastremski, 430 F.3d 560, 564 (2d Cir. 2005) ("We have applied equitable tolling only in 'rare and exceptional circumstances,' where we found that 'extraordinary circumstances' prevented a party from timely performing a required act") (quoting Doe v. Menefee, 391 F.3d 147, 175 (2d Cir. 2004)).

Far from demonstrating "extraordinary circumstances" warranting equitable tolling, Corso has not shown that the stays of discovery operated to prevent him from ascertaining Lieutenant

---

[8] Accounting for the number of days that discovery was stayed pending resolution of the defendants' motions, Corso argues that, depending on one's method of calculation, there were either 402 or 213 days remaining prior to the expiration of the statute of limitations when Corso moved to amend the FAC. See ECF No. 51 at 9-10.

Morris's identity, much less that his failure to discover her identity during the relevant limitations period was attributable to any misconduct by the defendants. Cf. Zerilli-Edelglass, 333 F.3d at 80 ("[E]quitable tolling is generally considered appropriate . . . where plaintiff was unaware of his or her cause of action due to misleading conduct of the defendant."). If anything, the record before the Court reflects that Corso was made aware of Lieutenant Morris's identity nearly two years before the limitations period expired (i.e., when he received the complaint report from the NYPD Legal Bureau in March of 2017 that identified Lieutenant Morris as the "Supervisor on Scene," see ECF No. 50-4 at 6), and that no effort was made to determine whether Lieutenant Morris -- one of only two officers, other than Officer Calle-Palomeque, identified in the reports that were produced in response to his FOIL requests, see ECF Nos. 44-2, 44-3 -- was the second officer involved in his arrest.[9] Under these circumstances, equitable tolling is not warranted.

With respect to Corso's alternative argument (i.e., that his proposed amendment relates back pursuant to Rule 15(c)(1)(A)), Corso maintains that his December 2016 and March 2017 FOIL requests

---

[9] The Court is unpersuaded by Corso's argument that a "supervisor [being] 'on scene' does not impart onto that supervisor the status of an arresting officer." ECF No. 58 at 8. While any confusion as to whether the "Supervisor On Scene" was the same person as, or different from, the second arresting officer could presumably have been resolved via a straightforward follow-up inquiry, Corso offers no indication that he ever even attempted to make such an inquiry prior to the end of the limitations period.

demonstrate that he acted with sufficient diligence to ascertain Lieutenant Morris's identity during the limitations period.  See ECF No. 51 at 15.  The Court disagrees.

New York courts have found diligence lacking (even in pro se cases) where greater diligence was demonstrated than Corso has shown here.  See Temple v. New York Cmty. Hosp., 933 N.Y.S.2d 321, 323 (N.Y. App. Div. 2nd Dep't 2011) ("[W]hile some limited discovery demands were served prior to the expiration of the statute of limitations, when the responses received were less than adequate, the plaintiff failed to promptly seek further discovery, neglected to submit a properly executed authorization to the disclosing party, and failed to properly and promptly seek assistance from the Supreme Court.").  See also Miles v. City of New York, No. 14 Civ. 9302 (VSB), 2018 WL 3708657, at *9 (S.D.N.Y. Aug. 3, 2018) (finding that a pro se plaintiff had "not exercised due diligence to identify the John Doe defendants prior to the expiration of the statute of limitations," where the plaintiff had attempted to file two FOIL requests but had failed to, inter alia, request a court order identifying the John Doe defendants).  Cf. Mabry v. New York City Dep't of Corr., No. 05 Civ. 8133 (JSR) (JCF), 2008 WL 619003, at *6 (S.D.N.Y. Mar. 7, 2008) (finding due diligence where plaintiff had "aggressively sought the identities of the defendants she wished to add").  To be sure, Corso offers no indication that he followed up with the NYPD Legal Bureau to

14

ascertain whether Lieutenant Morris, whose name was listed twice in Corso's complaint report, was in fact the second arresting officer.  Nor is there any indication that Corso reached out to the Corporation Counsel directly prior to the running of the limitations period to determine the identity of the "Jane Doe" defendant and that the Corporation Counsel refused to disclose that information.  Cf. Byrd v. Abate, 964 F. Supp. 140, 145 (S.D.N.Y. 1997) (relation back appropriate where plaintiff made numerous attempts prior to the end of the limitations period to discover the identity of the Jane Doe officer and where the Corporation Counsel repeatedly failed to disclose the requested information until after the limitations period had expired).

In sum, the filing of two identical FOIL requests simply does not demonstrate that Corso exercised sufficient due diligence to ascertain Lieutenant Morris's identity prior to the expiration of the limitations period.  Accordingly, Corso's proposed unlawful stop and search claim against Lieutenant Morris is time-barred, and his motion to amend the first amended complaint is denied.

**B.  Defendant's Motion to Dismiss Plaintiff's Fair Trial Claim**

Officer Calle-Palomeque has separately moved to dismiss plaintiff's fair trial claim on the grounds that the Supreme Court's June 2019 ruling in McDonough v. Smith added favorable termination as an element of a § 1983 fair trial claim based on

fabricated evidence, and that Corso —- whose criminal proceeding was resolved via his acceptance of an adjournment in contemplation of dismissal ("ACD") —- is unable to make that showing.[10]

For the reasons set forth below, the Court agrees in substantial part with the defendant that (i) post-McDonough, favorable termination is a required element of fabricated evidence claims, such as Corso's, that challenge the validity of the § 1983 plaintiff's criminal prosecution; and (ii) that in light of the Supreme Court's reasoning in McDonough, an ACD is not a "favorable termination" for purposes of proving a § 1983 fair trial claim. Plaintiff's fair trial claim therefore fails as a matter of law, and defendant's motion to dismiss that claim is granted.

*     *     *

Reversing a Second Circuit holding that "a fabrication of evidence claim accrues (1) when a plaintiff learns of the fabrication and it is used against him, and (2) his liberty has been deprived in some way," McDonough v. Smith, 898 F.3d 259, 266 (2d Cir. 2018), the Supreme Court in McDonough held that a § 1983

---

[10] To prevail on a § 1983 fair trial claim based on fabrication of evidence, the plaintiff must prove that an "(1) investigating official (2) fabricate[d] evidence (3) that is likely to influence a jury's decision, (4) forward[ed] that information to prosecutors, and (5) the plaintiff suffer[ed] a deprivation of liberty as a result." Jovanovic v. City of New York, 486 F. App'x 149, 152 (2d Cir. 2012). In McDonough, the Supreme Court held that the plaintiff "could not bring his fabricated-evidence claim under § 1983 *prior to favorable termination of his prosecution*," 139 S. Ct. at 2156 (emphasis added). As discussed herein, courts in this circuit have read McDonough as having introduced favorable termination as a required element of § 1983 fair trial claims based on fabricated evidence.

fair trial claim based upon fabricated evidence does not accrue until the criminal proceeding terminates in the plaintiff's favor. McDonough, 139 S. Ct. 2149, 2156 (2019).  In arriving at that conclusion the Court drew parallels from the common-law tort of malicious prosecution.[11]   The Court reasoned that because the plaintiff's fair trial claim, which alleged that fabricated evidence had been used to pursue a criminal judgment against him, "directly challenge[ed] -- and thus necessarily threaten[ed] to impugn -- the prosecution itself," id. at 2159, the plaintiff's claim implicated the same concerns that motivate the favorable termination requirement in the malicious prosecution context.  See id. at 2157 ("Malicious prosecution's favorable-termination requirement is rooted in pragmatic concerns with avoiding parallel criminal and civil litigation over the same subject matter and the related possibility of conflicting civil and criminal judgments, and likewise avoids allowing collateral attacks on criminal judgments through civil litigation.").  Because the same concerns were implicated, the Court concluded that "it ma[de] sense to adopt the same rule."  Id.  Specifically, petitioner's fair trial claim "remain[ed] most analogous to a claim of common-law malicious

---

[11] "The elements of a malicious prosecution claim under New York law are '(1) that the defendant initiated a prosecution against the plaintiff, (2) that the defendant lacked probable cause to believe the proceeding could succeed, (3) that the defendant acted with malice, and (4) that the prosecution was terminated in the plaintiff's favor.'" Rohman v. N.Y.C. Transit Auth. (NYCTA), 215 F.3d 208, 215 (2d Cir. 2000) (quoting Posr v. Court Officer Shield No. 207, 180 F.3d 409, 417 (2d Cir. 1999)) (emphasis added).

prosecution. . . [and] favorable termination is *both relevant and required* for a claim analogous to malicious prosecution that would impugn a conviction." Id. at 2160 (emphasis added).

While the Second Circuit has not yet addressed whether McDonough added favorable termination as a substantive element of a § 1983 fair trial claim, "[m]ost courts in this Circuit read McDonough to require favorable termination in fair trial claims that allege a deprivation of liberty resulting from the use of fabricated evidence in a criminal proceeding." Gondola v. City of New York, No. 16 Civ. 369 (AMD) (SJB), 2020 WL 1433874 at *4 (E.D.N.Y. Mar. 24, 2020) (collecting cases).   Although several courts have concluded that McDonough did not impose a favorable termination requirement on all fair trial claims, see Miller v. Terrillion, No. 16 Civ. 52 (ENV) (RLM), 2020 WL 549356, at *4 (E.D.N.Y. Jan. 30, 2020), courts in this Circuit appear to agree that McDonough did impose such a requirement where the § 1983 plaintiff, by alleging that his criminal proceedings were initiated on the basis of fabricated evidence, challenges the legality of the criminal proceeding itself.   See, e.g., Daniels v. Taylor, No. 18 Civ. 3717 (RA), 2020 WL 1165836, at *6 (S.D.N.Y. Mar. 11, 2020) (finding that favorable termination was a required element of the plaintiff's fair trial claim where the fair trial claim "attack[ed] the very charge for which [the plaintiff had] accepted an ACD"); Smalls v. Collins, No. 14 Civ. 02326 (CBA)

18

(RML), 2020 WL 2563393, at *3 (E.D.N.Y. Mar. 16, 2020) ("Although the issue presented in McDonough was the accrual date of a fair-trial claim under 28 U.S.C. § 1983, the opinion's reasoning strongly suggests that the Supreme Court would hold that favorable termination is a requirement of a fair-trial claim, at least in cases in which the plaintiff alleges a deprivation of liberty resulting from the use of fabricated evidence in a criminal proceeding."). See also Wellner v. City of New York, 393 F. Supp. 3d 388, 397 (S.D.N.Y. 2019) (holding that a favorable termination was not required where the plaintiff's fair trial claim "d[id] not question the validity of her conviction").

Here, because Corso's fair trial claim challenges the very evidence that supported the initiation of criminal proceedings against him, see ECF No. 27 ¶¶ 54-59 (alleging, inter alia, that the officers created and forwarded false evidence, including the purportedly manipulated knife, to prosecutors), Corso's fair trial claim, like the fair trial claim brought by the plaintiff in McDonough, "challenge[s] the integrity of [his] criminal prosecution[]." Id. at 2156. Accordingly, and even assuming, arguendo, that McDonough "did not go as far as to impose wholesale a favorable termination requirement on all fair trial claims," Miller, 2020 WL 549356, at *4, Corso's fair trial claim falls squarely within the category of fair trial claims that, post-McDonough, accrue only upon a favorable termination. Corso's fair

trial claim therefore fails as a matter of law if his acceptance of an ACD does not constitute a favorable termination.[12]

While it is well settled in this Circuit that acceptance of an ACD does not constitute a favorable termination in the malicious prosecution context and thus that acceptance of an ACD precludes a plaintiff's malicious prosecution claim, see Singleton v. City of New York, 632 F.2d 185, 193 (2d Cir. 1980), it does not necessarily follow that the same favorable termination standard should apply in the fair trial context.[13] Nevertheless, given that the majority opinion in McDonough drew extensively upon principles from the malicious prosecution context to guide its analysis of the plaintiff's fair trial claim, see McDonough, 139 S. Ct. at 2156, and having carefully considered the district court rulings that have addressed this issue to date, the Court is not convinced that there exists a principled basis for distinguishing between malicious prosecution and evidence fabrication claims when it comes to defining a favorable termination. The Court is ultimately persuaded by the reasoning of courts that have held that the

---

[12] The Supreme Court in McDonough declined to comment on which dispositions (other than acquittals) constitute a "favorable termination" in the fair trial context. Because the petitioner in that case was challenging a criminal proceeding that resulted in his acquittal and there was therefore no dispute that the criminal proceeding had terminated in his favor, the Court "ha[d] no occasion to address the broader range of ways a criminal prosecution (as opposed to a conviction) might end favorably to the accused." Id. at 2161 n.10.

[13] The Second Circuit recently clarified that in the context of a Section 1983 malicious prosecution claim, a finding of favorable termination requires "affirmative indications of innocence." Lanning v. City of Glens Falls, 908 F.3d 19, 25 (2d Cir. 2018).

acceptance of an ACD, as in the malicious prosecution context, bars a plaintiff from later bringing a fair trial claim based on fabricated evidence.  As the court in Daniel v. Taylor articulated:

> a plaintiff's acceptance of an ACD 'extinguishes a malicious prosecution claim . . . because it is a bargained-for dismissal of the criminal case.'  In light of McDonough's recognition that malicious prosecution is 'analogous' to a fair trial claim based on the fabrication of the evidence, the Court sees no reason why this principle would not apply with equal force to Plaintiff's fair trial claim.

No. 18 Civ. 3717 (RA), 2020 WL 1165836, at *6 (quoting Rothstein v. Carriere, 373 F.3d 275, 287 (2d Cir. 2004)).  See also Miller, 2020 WL 549356, at *4 ("[A] comparison of [Section 1983 malicious prosecution and fair trial claims] through the lens of McDonough leads to the inevitable conclusion that [the plaintiff's] fair trial claim is barred by his acceptance of an ACD"); Gondola, 2020 WL 1433874, at *5 (citing the absence of "any meaningful grounds for employing different definitions of favorable termination depending on whether the claim is for malicious prosecution or fair trial.").  But see Ross v. City of New York, No. 17 Civ. 3505 (PKC) (SMG), 2019 WL 4805147, at *5 (E.D.N.Y. Sept. 30, 2019) (concluding that "the favorable termination requirement for fair trial claims [is] necessarily different and more expansive than the one for malicious prosecution

claims," and holding that the plaintiff's acceptance of an ACD did not preclude his fair trial claim).[14]

Furthermore, the pragmatic concerns underlying the favorable termination requirement in the malicious prosecution context, discussed supra at 17, counsel in favor of limiting the ability of a criminal defendant who has accepted an ACD (i.e., a compromise disposition to which the criminal defendant consented in exchange for the dismissal of charges against him) from later challenging those charges through a fabricated-evidence fair trial claim.[15] Cf. Miller, 2020 WL 549356, at *6 ("[W]here, as here, a criminal defendant has traded resolution of his culpability for peace, he may not bring a fair trial claim, the success of which would necessarily undermine the validity of a prosecution settled only by his acceptance of an ACD").

In short, the Court concludes that in light of McDonough, Corso's acceptance of an ACD bars his fair trial claim. Defendant's partial motion to dismiss Corso's fair trial claim is therefore granted.

---

[14] In support of its conclusion that the favorable termination requirement in the fair trial context is distinct from the favorable termination requirement in the malicious prosecution context, the court in Ross notes only that fair trial and malicious prosecution claims derive from different constitutional amendments. Ross, 2019 WL 4805147, at *8 n.14. It is not immediately obvious to this Court why such a distinction supports the conclusion that the favorable termination standard in the two contexts is necessarily distinct.

[15] "An adjournment in contemplation of dismissal, like a consent decree, involves the consent of both the prosecution and the accused and leaves open the question of the accused's guilt." Singleton, 632 F.2d at 193.

## IV.  <u>Conclusion</u>

For the foregoing reasons, plaintiff's motion for leave to amend is denied and defendant's partial motion to dismiss plaintiff's fair trial claim is granted.  Given this ruling and the Court's earlier rulings, the parties are directed to file, within two weeks of today's date, submissions addressing what steps, if any, remain necessary to fully resolve this case.  The Clerk of Court is respectfully directed to terminate the motions pending at Docket Numbers 49 and 54.

**SO ORDERED.**

Dated:          New York, New York
                May 26, 2020

                                        NAOMI REICE BUCHWALD
                                        UNITED STATES DISTRICT JUDGE